UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEREK CALDWELL,

    Plaintiff,

v.

GREGORY SCHALLER, et. al.,

    Defendants.

CASE NO. 14-cv-5827-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: June 12, 2015

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

Before the Court is defendants' Motion for Summary Judgment (*see* Dkt. 23). Although in January, 2015 plaintiff filed (*see* Dkt. 27) and this Court granted (*see* Dkt. 30) a motion for a sixty-day extension for plaintiff to respond to defendants' Motion for Summary Judgment, plaintiff has not filed a response to defendant's Motion for Summary Judgment.[1]

Plaintiff suffers from pain in his right hip and lower back (*see* Amended Complaint, Dkt. 20, p. 3). However, he cannot demonstrate that any defendants have been deliberately indifferent

---

[1] Plaintiff's subsequent Motion for Extension of Deadlines re Discovery and Dispositive Motions (*see* Dkt. 29) was denied (*see* Dkt. 32).

REPORT AND RECOMMENDATION - 1

1  to any serious medical need of plaintiff. He has received x-rays, ibuprofen and other

2  recommendations and treatment appropriate for his condition. At most, plaintiff presents an

3  alternative opinion as to the proper treatment. Therefore, defendants' motion for summary

4  judgment should be granted as to all defendants.

5  **FACTS**

6  Plaintiff alleges that he suffered from an injury to his right hip and lower back during his

7  incarceration at Stafford Creek Corrections Center ("SCCC") (*see* Amended Complaint, Dkt. 20,

8  p. 3). He contends that he has been denied adequate medical care and has suffered a deliberate

9  indifference to his serious medical needs (*see id.*).

10  On June 5, 2010, plaintiff was "seen for his intake screening and reported knee pain for

11  four years with a weight of 450 pounds" (*see* Declaration of Gregory Schaller, Dkt. 24, ¶ 5,

12  Attachment A, p. 2). He does not appear to have reported any hip pain at this initial intake

13  screening (*see* Dkt. 24, Attachment A, p. 2).

14  In support of their motion for summary judgment, defendants submit the declaration of a

15  certified physician's assistant with DOC, Gregory Schaller, who indicates that he is familiar with

16  plaintiff because he provided medical care to plaintiff on four occasions while assigned to SCCC

17  (*see* Declaration of Gregory Schaller, Dkt. 24, at ¶¶ 1, 3). According to Mr. Schaller, plaintiff did

18  not go to medical again after his initial June 5, 2010 intake until April 17, 2012 for a health

19  records review, when plaintiff reported that he had suffered from a right hip fracture in 2009 (*see*

20  *id.* at ¶ 5, Attachment A, p. 5). Plaintiff's medical record indicates that plaintiff also "reported

21  that he was told he was young enough to recover without pinning him," which Mr. Schaller

22  opines indicates "minimal hip injury" (*see id.* at ¶ 5). Mr. Schaller indicates that plaintiff also

23  reported at this April 17, 2012 health records review that "he was able to walk, sit and stand

24

without much effort" (*see id.*, at ¶ 5, Attachment A, p. 5). According to Mr. Schaller, an April 26, 2012 x-ray indicates that plaintiff had "no hip fracture or stress fracture and moderate degenerative changes of the right hip joint" (*see id.* at ¶ 5). Mr. Schaller contends that degenerative changes "reflect classic osteoarthritis or wear and tear of joint" (*see id.*). Plaintiff's medical record indicates that plaintiff was prescribed ibuprofen, which Mr. Schaller indicates "is the appropriate prescription to treat osteoarthritis" (*see id.*). The note in plaintiff's medical record indicates that on May 3, 2012, plaintiff indicated that he "has no pain right now," although he reported intermittent episodes of pain (*see id.*, Attachment A, p. 5). Plaintiff was next seen in medical on August 20, 2012, when he reported chronic hip pain (*see id.*, at ¶ 6). Plaintiff received a prescription for ibuprofen, which was renewed on October 22, 2012 (*see id.*). According to Mr. Schaller, plaintiff "was then seen in medical six months later for his intake screening into the [SCCC] where he reported no complaints" (*see id.*). Notes from plaintiff's medical record substantiate that in April, 2013, plaintiff reported no complaints at that time (*see id.*, Attachment B, p. 2). In addition, the Court notes that plaintiff has not disputed this version of the factual history and has submitted nothing to call it into question.

      When plaintiff was seen next in medical, on June 4, 2013, he reported chronic hip pain since a fall injury more than 10 years prior (*see id.* at ¶ 7, Attachment C, p. 2). Plaintiff indicated that he was walking well without assistance and was not taking over-the-counter pain medications at the time (*see id.* at ¶ 7, Attachment C, p. 2). As indicated by Mr. Schaller's declaration and plaintiff's medical record, plaintiff also "stated that he was working at a job which required him to stand more than eight hours a day which was exacerbating his pain" (*see id.*). Plaintiff was provided a limitation to a lower bunk and was recommended to engage in no prolonged standing (*see id.*). Mr. Schaller indicates that his first encounter with plaintiff was

1 | when plaintiff next was seen in medical on November 7, 2013 (*id.* at ¶ 8). At that time, Mr.
2 | Schaller reviewed plaintiff's high blood pressure and right hip arthritis, prescribed blood
3 | pressure medication, advised plaintiff to obtain ibuprofen from the prison commissary, and
4 | recommended that plaintiff lose weight due to his obesity and to reduce stress on his right hip
5 | (*see id.*). Mr. Schaller noted at that time that plaintiff "appeared to have normal nonantalgic (non
6 | pain based) gait when he did not think he was being observed as well as full weight bearing
7 | without grimace" (*see id.*). Mr. Schaller's reporting of this assessment is substantiated by
8 | plaintiff's medical record (*see id.* at Attachment D, p. 2).

9 |       Mr. Schaller indicates that five months subsequently passed without any more requests
10 | for medical care by plaintiff (*see id.* at ¶ 9). Plaintiff then reported to medical on April 21, 2014
11 | at which time Mr. Schaller examined plaintiff for complaints of blood in stool, left flank pain and
12 | excessive urination caused by high blood pressure medication (*see id.* at ¶ 9, Attachment E, p. 2).
13 | Mr. Schaller indicates that he again recommended weight loss to plaintiff (*see id.*). Mr. Schaller
14 | also indicates that at this appointment, plaintiff did not make any complaints of right hip pain
15 | (*see id.*). It appears from plaintiff's medical record that he did not show up for his subsequent
16 | appointment (*see id.* at Attachment E, p. 2).

17 |       On May 27, 2014, plaintiff reported to medical for complaints of hip and back pain (*see
18 | id.*, ¶ 10). The nurse who evaluated plaintiff provided plaintiff with education, and encouraged
19 | weight loss as plaintiff weighed 400 pounds at that time (*see id.*; *see also* Attachment F, p. 2).

20 |       On June 9, 2014, Mr. Schaller examined plaintiff for complaints of right hip pain and
21 | back pain in addition to other health issues, such as high blood pressure and obesity (*see id.* at
22 | ¶10; *see also* Attachment F. pp. 2-3). Mr. Schaller noted in plaintiff's medical records that
23 | plaintiff weighed 403.2 pounds at that time and was morbidly obese (*see id.*). Mr. Schaller
24 |

1  ordered an x-ray of plaintiff's right hip and lower back, and increased and added additional blood

2  pressure medication (*see id.*). Mr. Schaller also recommended weight loss and that plaintiff

3  continue stretching exercises (*see id.*). Mr. Schaller saw plaintiff for a follow up appointment on

4  June 9, 2014 (*see id.* at ¶ 11, Attachment F, p. 3). He reviewed plaintiff's x-ray and "noted a

5  grossly normal lumbar spine and moderate to severe osteoarthritis of the right hip" (*see id.*). Mr.

6  Schaller wrote a prescription for salsalate, which Mr. Schaller indicates is similar to ibuprofen,

7  for plaintiff's right hip pain and directed plaintiff to continue his blood pressure medication (*see

8  id.*). Mr. Schaller also spoke with plaintiff at that time about potential hip replacement, which he

9  had indicated may be necessary in the long-range future (*see id.*). Mr. Schaller indicates that at

10 this appointment, plaintiff reported that he was able to ambulate, still had functional activities of

11 daily living and also could ambulate without assistance (*see id.*). Mr. Schaller also recommended

12 weight loss at this appointment (*see id.*).

## STANDARD OF REVIEW

14 Summary judgment is appropriate if "the pleadings, the discovery and disclosure

15 materials on file, and any affidavits, show that there is no genuine dispute as to any material fact

16 and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a

17 genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to

18 find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see*

19 *also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

20 1987). When presented with a motion for summary judgment, the court shall review the

21 pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S.

22 at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory,

23 nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing

24

facts." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). However, "a pro se complaint will be liberally construed . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

## DISCUSSION

### I. Stafford Creek Corrections Center

Although a plaintiff can maintain a § 1983 claim against a person acting under color of state law, *see Parratt*, *supra,* 451 U.S. at 535, neither a state, nor a state agency that is an arm of the state, is a person for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990) (*citing Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)); *Will, supra*, 491 U.S. at 66-70. This rationale applies to state agencies such as the Washington Department of Corrections ("DOC") and the Stafford Creek Corrections Center ("SCCC"), *see Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Allee v. Or. Dep't. of Corr.*, 315 Fed. Appx. 610, 611 (9th Cir. 2009) (unpublished memorandum opinion) (*citing Will, supra*, 491 U.S. at 66). Although defendants request summary judgment as to defendant SCCC, SCCC does not appear to be a named defendant in plaintiff's Amended Complaint (*see* Dkt. 20).

### II. Alleged deliberate indifference to plaintiff's serious medical need

The Eighth Amendment prohibits deliberate indifference to a person's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jones v. Johnson*, 791 F.2d 769, 771 (9th

1  Cir. 1986).  The government has an obligation to provide medical care for prisoners, and the

2  Eighth Amendment proscribes deliberate indifference to their serious medical needs.  *Estelle*,

3  *supra,* 429 U.S. at 103 (1976).  Such conduct is actionable under 42 U.S.C. § 1983.  *See*, *e.g*.,

4  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *reversed on other grounds, WMX*

5  *Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). According to the Ninth

6  Circuit, prison officials "'are indifferent to prisoners' serious medical needs when they deny,

7  delay, or intentionally interfere with medical treatment.'" *Jackson v. McIntosh*, 90 F.3d 330, 332

8  (9th Cir. 1996) (*quoting Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)).

9       To establish deliberate indifference, a prisoner must show that a defendant purposefully

10  ignored or failed to respond to the prisoner's pain or possible medical need. *See McGuckin*,

11  *supra,* 974 F.2d at 1060; *Estelle*, *supra,* 429 U.S. at 104.  A determination of deliberate

12  indifference involves an examination of two elements: (1) the seriousness of the prisoner's

13  medical need; and (2) the nature of defendant's response to that need. *See McGuckin*, *supra,* 974

14  F.2d at 1059.  A serious medical need exists if the failure to treat a prisoner's condition could

15  result in further significant injury or the unnecessary and wanton infliction of pain.  *Id*.

16       In order to establish deliberate indifference, there must first be a purposeful act or failure

17  to act on the part of the defendant. *Id*. at 1060. A difference of opinion between a prisoner and

18  medical authorities regarding proper medical treatment does not give rise to a §1983 claim.

19  *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in

20  diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

21  Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). According to

22  the Supreme Court, an official can be found liable pursuant to the Eighth Amendment if "the

23

24

1 | official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer v.*
2 | *Brennan*, 511 U.S. 825, 837 (1994).

3 |      Even if the Court concludes for the purposes of defendants' motion for summary
4 | judgment that plaintiff has a serious medical need, the Court must inquire as to the nature of
5 | defendants' response to that need. *See McGuckin*, *supra,* 974 F.2d at 1059. A review of the facts,
6 | discussed above, indicates that defendants have not ignored or failed to respond to plaintiff's
7 | pain or possible medical need. *See McGuckin*, *supra,* 974 F.2d at 1060; *Estelle*, *supra,* 429 U.S.
8 | at 104. Instead, as noted above, plaintiff was provided with x-rays; prescriptions and
9 | recommendations for ibuprofen and salsalate; and recommendations for stretching and weight
10 | loss.

11 |      This conclusion based on the facts discussed is buttressed by the declaration submitted by
12 | Dr. Sara Smith, M.D. in support of defendants' Motion for Summary Judgment (*see* Dkt. 25). Dr.
13 | Smith was employed as a physician for DOC and was stationed at SCCC from July, 2011
14 | through September, 2013; and again starting in September, 2014 (*see id.* at ¶ 2). Although Dr.
15 | Smith has not examined plaintiff, she indicates in her declaration that she is familiar with him, as
16 | he is housed at SCCC, and she has reviewed his medical records (*see id.* at ¶ 3). She discusses
17 | some of plaintiff's medical encounters, as well as her approval of a request for his physical
18 | therapy evaluation and his subsequent home exercise plan (*see id.* at ¶ 4). Dr. Smith opines that
19 | her review of plaintiff's medical records "does not indicate any further treatment for his right hip
20 | pain is warranted at this time" (*see id.* at ¶ 5). Plaintiff has submitted nothing in response to this
21 | declaration, and has submitted no evidence to counter Dr. Smith's opinion.

22 |      Giving plaintiff every benefit of the doubt, and construing his pleadings as liberally as
23 | possible, he has presented, at most, his own opinion that he should be receiving additional or
24 |

REPORT AND RECOMMENDATION - 8

1  different treatment (*see* Amended Complaint, Dkt. 20). However, a difference of opinion
2  between a prisoner and medical authorities regarding proper medical treatment does not give rise
3  to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).
4        Similarly, although plaintiff indicates in his grievance (without evidence) that he is
5  suffering from lack of proper medical attention due to negligence (*see* Dkt. 20, p. 4), mere
6  negligence in diagnosing or treating a medical condition, without more, does not violate a
7  prisoner's Eighth Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.
8  1988).
9        Therefore, for the stated reasons, Defendants' Motion for Summary Judgment on
10 plaintiff's Eighth Amendment claim should be granted in full.

## CONCLUSION

12       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have
13 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.
14 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*
15 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit
16 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June
17 12, 2015, as noted in the caption.
18       Dated this 22nd day of May, 2015.

J. Richard Creatura
United States Magistrate Judge